**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| SHADARRIAN GRIMES, | : | MOTION TO VACATE |
|    Movant, | : | 28 U.S.C. § 2255 |
| | : | |
| v. | : | CRIMINAL INDICTMENT NO. |
| | : | 1:19-CR-0142-TCB-RDC-3 |
| UNITED STATES, | : | |
|    Respondent. | : | CIVIL FILE NO. |
| | : | 1:21-CV-0906-TCB-RDC |

**UNITED STATES MAGISTRATE JUDGE'S
FINAL REPORT AND RECOMMENDATION**

Movant has filed a 28 U.S.C. § 2255 motion to vacate, set aside, or correct his federal sentence entered under the above criminal docket number. The matter is before the Court on the § 2255 motion, as supplemented [Docs. 136, 138], and Respondent's response [Doc. 139]. For the reasons discussed below, Movant's motion to vacate and a certificate of appealability are due to be denied.

I.   **Background**

In July 2019, the Grand Jury for the Northern District of Georgia indicted Movant on two counts: (1) count one, conspiring to possess with intent to distribute at least five kilograms of a mixture containing cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(A)(ii)(II) and 846, and (2) count four, possessing with intent to

distribute at least five hundred grams of a mixture containing cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(ii), and 846.  [Doc. 45 at 1-3].[1]

In December 2019, represented by James Gabriel Banks, Movant entered into a guilty plea and plea agreement, pleaded guilty to both counts, and agreed to a limited waiver of appeal.  [Doc. 98; Doc. 98-1 at 1, 14].  The Court accepted Movant's guilty plea.  [Doc. 139-2 at 12].  By judgment entered on March 16, 2020, the Court imposed two, concurrent 144-month terms of imprisonment.  [Doc. 117 at 2].  The record does not show that Movant filed a direct appeal.

On March 1, 2021, Movant filed his instant § 2255 motion.  Therein, Movant raises the following three grounds:  (1) Movant's sentence was in excess of the statutory maximum and counsel was ineffective for failing to object to the two-point firearm enhancement under U.S.S.G. § 2D1.1(b)(1), (2) the government breached the plea agreement by seeking a two-point enhancement under § 2D1.1(b)(1), and (3) Movant's sentence was imposed in violation of due process and his Sixth Amendment right to have a jury determine facts that increase the statutory maximum. [Doc. 136 at 4, 5, 7; Doc. 136-1 at 3-5, 10].

---

[1] When citing to the record, the Court cites to the cm/ecf electronic pagination.

II.   **Legal Standards**

A.   **Standard under 28 U.S.C. § 2255**

Section 2255 of Title 28 allows a district court to vacate, set aside, or correct a federal sentence that was imposed in violation of the Constitution or laws of the United States or was imposed by a court without jurisdiction, exceeds the maximum sentence authorized by law, or is otherwise subject to collateral attack.  28 U.S.C. § 2255.  Collateral relief, however, is limited.  "Once [a] defendant's chance to appeal has been waived or exhausted, . . . we are entitled to presume he stands fairly and finally convicted," United States v. Frady, 456 U.S. 152, 164 (1982), and it is the movant's burden to establish his right to collateral relief, Rivers v. United States, 777 F.3d 1306, 1316 (11th Cir. 2015).

Collateral review of a claim that could have been raised on direct appeal, but was not, is foreclosed unless the movant can show cause and prejudice for his default or actual innocence.  Fordham v. United States, 706 F.3d 1345, 1349 (11th Cir. 2013).  "[T]o show cause for procedural default, [a movant] must show that some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal . . . " or that the matter was not raised because of ineffective assistance of counsel.  Lynn v. United States, 365 F.3d 1225, 1235 (11th Cir. 2004);

3

see also Reece v. United States, 119 F.3d 1462, 1468 (11th Cir. 1997) (holding that, absent an "objective factor external to the defense" as cause, the movant must show that the default was caused by ineffective assistance of counsel (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986))).  If a petitioner shows cause, he also must show prejudice – that the error complained of "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Reece, 119 F.3d at 1467 (emphasis in original) (quoting Frady, 456 U.S. at 170).  "To show actual innocence, a movant must (1) present new, reliable evidence that he is factually innocent of the crime of conviction; and (2) establish that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt."  Keelan v. United States, 20-11487-E, 2020 WL 6158469, at *1 (11th Cir. Aug. 13, 2020) (citing Schlup v. Delo, 513 U.S. 298, 324, 327 (1995)), cert. denied, _ U.S. _, 141 S. Ct. 1525 (2021).

Section 2255 relief "is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice."  Lynn, 365 F.3d at 1232 (quoting Richards v. United States, 837 F.2d 965, 966 (11th Cir. 1988)).  A constitutional claim of ineffective assistance of counsel, which generally

cannot be fully litigated on direct appeal, is properly raised on collateral review in order to allow for adequate development and presentation of relevant facts.  Massaro v. United States, 538 U.S. 500, 505-09 (2003).

"The district court is not required to grant a petitioner an evidentiary hearing if the § 2255 motion 'and the files and records of the case conclusively show that the prisoner is entitled to no relief.'"  Rosin v. United States, 786 F.3d 873, 877 (11th Cir. 2015) (quoting § 2255(b)).  Movant has not alleged facts that, if true, warrant relief, and he is not entitled to an evidentiary hearing.

### B.    Ineffective Assistance of Counsel Standard

Movant raises a claim based on ineffective assistance of counsel to which Strickland v. Washington, 466 U.S. 668 (1984), applies.  A criminal defendant possesses a Sixth Amendment right to "reasonably effective" legal assistance.  Id. at 687.  To show constitutionally ineffective assistance of counsel, a petitioner must establish that (1) counsel's representation was deficient and (2) counsel's deficient representation prejudiced him.  Id. at 690-92.  Under the first prong, a petitioner must show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  Id. at 690.  "Because we presume counsel was competent, [the petitioner] 'must establish that no

competent counsel would have taken the action that his counsel did take.'" Dell v. United States, 710 F.3d 1267, 1281 (11th Cir. 2013) (quoting Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000) (*en banc*)).  Under the second prong, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694.  The habeas petitioner has the burden of affirmatively proving prejudice, and a "conceivable effect" on the proceedings does not show prejudice.  Wood v. Allen, 542 F.3d 1281, 1309 (11th Cir. 2008) (quoting Strickland, 466 U.S. at 693)).   Strickland applies to claims of ineffective assistance of appellate counsel, and the petitioner must demonstrate that counsel performed deficiently and that "the neglected claim would have a reasonable probability of success on appeal[.]"  Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1300 (11th Cir. 2013) (quoting Heath v. Jones, 941 F.2d 1126, 1132 (11th Cir. 1991)).  The Court may resolve an ineffective assistance claim based on either prong.  Pooler v. Sec'y, Fla. Dep't of Corr., 702 F.3d 1252, 1269 (11th Cir. 2012).

### III.   <u>Discussion</u>

#### A.   <u>Ground One – Counsel was Ineffective for Failing to Object to the § 2D1.1(b)(1) Firearm Enhancement</u>

The indictment under which Movant was charged provided notice that Movant previously had been convicted, in 1999, for trafficking in cocaine.[2]  [Doc. 45 at 2]. In his guilty plea and plea agreement, Movant agreed (1) that he was subject to a maximum term of life and a ten-year mandatory minimum on count one and a maximum term of forty years and a five-year mandatory minimum on count four; (2) that the Court may impose a sentence up to the maximum term and no one could predict his sentence at the time; (3) that the government would dismiss the § 851 sentencing enhancement; (4) that the government would bring no further criminal charges against Movant related to the charges to which he was pleading guilty; (5) that the government would recommend U.S.S.G. § 2D1.1(c)(2) (for at least 150 but less than 450 kilograms of cocaine) as the applicable offense guideline; (6) that

---

[2] Federal drug statutes provide for a minimum fifteen-year sentence but not more than life for certain drug violations committed "after a prior conviction for a serious drug felony or serious violent felony has become final[.]"  21 U.S.C. § 841(b)(1)(A).  Such increased punishment, however, is not allowed unless the United States attorney files and serves an information that states in writing the previous conviction relied upon. 21 U.S.C. § 851.

the government, with certain exceptions, would recommend a maximum acceptance-of-responsibility adjustment under U.S.S.G. § 3E1.1; and (7) that the parties reserved the right to make recommendations on the guidelines application and agreed "that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed." [Doc. 98-1 at 3-7].

The Presentence Investigation Report (PSR) lists Movant's offense conduct and states that Roberto Garza-Mendez routinely sold kilograms of cocaine to Movant for $31,000 to $32,000 a kilogram and typically delivered the drugs to Movant's residence. [Doc. 140 ¶ 13]. Also, as part of Movant's offense conduct, the PSR includes the following, based on an interview with Movant:

> On March 6, 2019, agents executed a federal search warrant at [Movant's] residence, 245 Richlake Drive in Suwanee, Georgia. Inside the home, agents found approximately $36,084 in U.S. currency and a **Smith and Wesson Model 5903 9 caliber pistol loaded with 16 bullets** in the master bedroom closet. The handgun was found inside a shoebox on a shelf in the closet. There were numerous other shoe boxes on the shelf. A suspected kilogram press, a spoon, Ziploc baggies containing cocaine residue and user amounts of suspected marijuana were found in the basement. During the interview, [Movant] advised agents there was no money or guns in the residence. After the items were found in the closet, [Movant] told agents he forgot the items were there, and he had owned the gun for several years.

[Id. ¶ 24 (emphasis in original)].   The PSR also states, based on a subsequent interview with Movant, that the cash in the home was going to be used to pay for cocaine.  [Id. ¶ 26].

The PSR (1) stated that Movant's base offense level was thirty-six under U.S.S.G. § 2D1.1(c)(2);[3] (2) increased Movant's offense level by two under U.S.S.G. § 2D1.1(b)(1) for the offense characteristic of possessing a dangerous weapon, stating that "[t]here was a firearm in the defendant's closet during a search of his residence"; (3) decreased Movant's offense level by three for acceptance of responsibility; and (4) stated that Movant's guidelines range was 168 to 210 months, based on an adjusted offense level of thirty five and a criminal history category of I.[4] [Id. ¶¶ 34, 35, 41, 42 and p. 21].

---

[3] Movant incorrectly states that his base offense level was thirty-four.  [Doc. 136-1 at 2].

[4] Without the firearm enhancement, Movant's guidelines range would have been 135 to 168 months, based on an adjusted offense level of thirty-three.  See U.S.S.G. Ch. 5, Pt. A.

In his sentencing memorandum, Movant sought a below guidelines sentence and pointed out the degree to which he had taken responsibility, including the fact that he had lodged no objections to the PSR. [Doc. 111 at 1-2].

At sentencing, Movant confirmed to the Court that he had read the PSR. [Doc. 139-3 at 3]. Without objection, the Court adopted the findings of fact and conclusions of law in the PSR and found that Movant's base offense level was thirty-six; that his adjusted offense level was thirty-five, after a two-point increase for possession of a dangerous weapon and a three-point decrease for acceptance of responsibility; and that, with a criminal history category of I, Movant's guidelines range was 168 to 210 months. [Id.]. The Court inquired whether it had correctly computed the guidelines range, and Movant confirmed that it had.  [Id.].  The government recommended a 186-month term of imprisonment in light of the fact that "[Movant] was trafficking a dangerous drug for a very long period of time; a drip, drip, drip of cocaine put on the streets in the district to the tune of 200 kilograms over ten years is what we know about. . . . [T]he single use amount of this drug is around about a gram. . . . [W]e are talking orders of magnitude of drugs that are being put on the street here to the tune of hundreds of thousands[.]"  [Id. at 3-4].  Movant, through counsel, recommended 144 months, below the guidelines range.  [Id. at 17].  The Court sentenced Movant,

10

below the guidelines range, to a total 144-month term of imprisonment. [Id. at 17-

19]. In doing so, the Court reasoned as follows –

> I have carefully considered all of the sentencing factors in 18 USC
> Section 3553(a). . . . I don't think that 16 years or 15-and-a-half, which
> the government is seeking, or the guidelines range which is 14 years is
> going to do any good for anybody any more than 12 years. And frankly,
> I am not sure that 12 years is right, but I am not going below that. But
> from everything I have read, from what I have heard in this courtroom
> today, I believe that [Movant] is a redeemable human being. I think he
> is, frankly, made in the image of the living God, and I think that he has
> hope.

[Id. at 18].

In § 2255 motion, ground one, Movant contends that counsel was ineffective

for failing to object to the § 2D1.1(b)(1) firearm enhancement.[5] [Doc. 136 at 4; Doc.

136-1 at 3-5]. Movant (1) states that counsel did not know or inform him of the

potential two-level firearm enhancement under § 2D1.1(b)(1) before Movant learned

of the enhancement via the PSR and (2) now contests the two-level enhancement

because it was based on an erroneous finding of fact. [Doc. 136-1 at 3-5].[6]   Movant

---

[5] Movant's ground one reference to his sentence being in excess of the
statutory maximum [see Doc 136 at 4, Doc. 136-1 at 3] is contradicted and disproven
by the record and is not further addressed.

[6] In presenting ground one, Movant refers to the government's agreement not

contends that to justify a firearm enhancement the government was required to establish by a preponderance of evidence that the firearm was present at the site of the charged conduct or was possessed by Movant during conduct associated with the offense. [Id. at 7]. Movant states –

> Here, not one witness said anything about [Movant] using or carrying a firearm during any of the drug transactions for which he was convicted. Nor did the government produce any evidence that [Movant] possessed the firearms in question here during conduct associated with drug-trafficking activities. The only evidence that the government introduced was that the police found a handgun inside [Movant's] home where no one suggested that any activities related to the conspiracy ever took place.

[Id. at 8]. Movant contends that the weapon "was found in a closet wrapped in a towel and had been placed there years ago by [Movant's] wife." [Id.].

---

to seek an enhancement pursuant to § 851 and Fed. R. Crim. P. 48(a). [Doc. 136-1 at 3]. The government did *not* pursue an enhancement under § 851. Further, an enhancement under § 851 is unrelated to an offense-level increase under § 2D1.1(b)(1). Rule 48(a), which applies to dismissing an indictment, also is unrelated to an offense-level increase under § 2D1.1(b)(1).

Movant also refers to the government's agreement not to bring additional charges against Movant related to the conduct to which he was pleading guilty. When Movant received an increase of his offense level for the offenses charged under counts one and four, he was not subjected to "additional charges." If the government had brought additional charges, Movant would have been indicted on, or charged with, a firearm count.

12

Respondent responds that counsel was not deficient as an objection would have been futile when (1) the government had met its burden of showing that the firearm was present at the site of the charged offense; (2) the burden had shifted to Movant; and (3) it was reasonable for counsel to conclude that he would not be able to show that a connection between the firearm and Movant's drug offenses was "clearly improbable."  [Doc. 139 at 10-13].

The guidelines for the crimes of possessing and/or conspiring to possess with intent to distribute cocaine provide for a two-level enhancement if a "dangerous weapon (including a firearm) was possessed[.]" U.S.S.G. § 2D1.1(b)(1).  "The [two-level] enhancement for weapon possession in subsection (b)(1) reflects the increased danger of violence when drug traffickers possess weapons. The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, Application Note 11(A).

> To justify a firearm enhancement, the government must establish by a preponderance of the evidence either that: (1) the firearm was present at the site of the charged conduct, or (2) the defendant possessed a firearm during conduct associated with the offense of conviction. . . . If the government meets its burden, then the burden shifts to the defendant to show that a connection between the weapon and the offense was clearly improbable.

13

United States v. Black, 685 F. App'x 745, 750 (11th Cir. 2017) (citing United States v. Stallings, 463 F.3d 1218, 1220 (11th Cir. 2006)).  "The Eleventh Circuit has held that a proximity between guns and drugs, alone, is sufficient for the Government to meet its burden as to a Section 2D1.1(b)(1) firearms enhancement."  Roberson v. United States, 2:15-CR-10, 2018 WL 1746132, at *8-9 (S.D. Ga. Apr. 11, 2018) (citing United States v. Carillo-Ayala, 713 F.3d 82, 91-92 (11th Cir. 2013)) (reviewing cases, stating that "the firearm enhancement was appropriately applied where a gun was recovered in the same room as scales, a bag containing cocaine residue, and a large amount of cash" and that "firearm enhancement [was] proper where 'agents found a firearm and other drug-related items in [defendant's] residence, where he engaged in conspiratorial conversations'"), R. & R. adopted, 2018 WL 3536073 (S.D. Ga. July 23, 2018).  In applying the guidelines, the sentencing court may rely on undisputed statements in the PSR.  Fed. R. Crim. P. 32(i)(3)(A); United States v. Hinds, 435 F. App'x 832, 838 (11th Cir. 2011); United States v. Wade, 458 F.3d 1273, 1277 (11th Cir. 2006) ("It is the law of this circuit that a failure to object to allegations of fact in a PSI admits those facts for sentencing purposes.").

To succeed on a claim that counsel was ineffective for failing to object to a firearm enhancement, a movant must show that no reasonable counsel would have

failed to object and that, had counsel objected, there is a reasonable probability that the sentencing court would have found that the government had not met its burden. See Nguyen v. United States, 487 F. App'x 484, 485 (11th Cir. 2012) (stating that § 2255 movant had the burden of showing "(1) that his counsel rendered deficient performance by failing to object, and (2) that there is a reasonable probability that the deficient performance affected the outcome of the sentencing hearing (i.e., that there is a reasonable probability that, had counsel objected, the government would not have been able to establish [facts relevant to the guideline at issue])"). A challenge in regard to counsel's failure to object to PSR error will fail when the movant (1) fails to present specific facts as to what trial counsel should have presented to demonstrate the error and/or (2) fails to demonstrate, based on the record or documentation, that he informed counsel of the alleged PSR error. See Cowan v. United States, 17-12702-D, 2018 WL 6919887, at **9-10 (11th Cir. Sept. 11, 2018) (finding that § 2255 claim, based on ineffective assistance for not objecting to PSR facts, failed because "Mr. Cowan has failed to point to anything in the record showing that he informed counsel about alleged material factual errors in the PSR and has provided no documentation of such a conversation" and concluding that a hearing was not necessary); Boles v. United States, CR 1:14-00199-WS-N-7, 2021 WL

15

1207733, at **12-15 (S.D. Ala. Mar. 2, 2021) (finding that § 2255 claim, for ineffective assistance for failing to object to enhancement based on PSR and other evidence, failed when movant did not present "reasonably specific, non-conclusory facts" as to what trial counsel should have presented to contest the enhancement), R. & R. adopted, 2021 WL 1206594 (S.D. Ala. Mar. 30, 2021); cf. Hill v. Moore, 175 F.3d 915, 923 (11th Cir. 1999) (holding that evidence proffered in petition was insufficient to warrant jury instruction on voluntary intoxication and, thus, did not show prejudice based on counsel's failure to introduce such evidence); United States v. Hilliard, 752 F.2d 578, 580-81 (11th Cir. 1985) ("[A]ppellant clearly failed to show that she was prejudiced. Appellant has failed to provide any examples of evidence that would have been introduced or new lines of defense that could have been pursued if her attorney had interviewed the government's witnesses").

Here, Movant's counsel raised no objection to the firearm enhancement or relevant PSR facts and asked for a below-guidelines sentence – pointing out to the Court the extent of Movant's cooperation and his lack of objections to the PSR. Movant, who had an opportunity to address the Court at sentencing, did not mention the facts related to the firearm enhancement and apparently was willing, at that time, to reap the benefits from being able to assert full cooperation and lack of objections

to the PSR.  Under these circumstances, Movant fails to show that no reasonable counsel would have failed to object to the firearm enhancement and/or related PSR facts.  See Williams v. United States, 8:15-CR-470-T-27AEP, 2020 WL 758176, at *6 (M.D. Fla. Feb. 14, 2020) (finding that "a reasonable attorney could have determined that maintaining the objection might adversely affect his arguments for an additional two-level reduction based on cooperation, a lower criminal history score, and a downward variance based on § 3553(a) factors").

The facts presented in the PSR support a finding that the firearm was present at the site of the charged conduct.  [See Doc. 140 ¶¶ 13, 24, 26]; see also Black, 685 F. App'x at 750.  In addition, Movant cannot identify anything in the record to demonstrate that he apprised counsel of any alleged factual errors in the PSR related to the gun and the drug activity at his home.  Although Movant criticizes his counsel's alleged failure in regard to the gun enhancement, Movant, now proceeding as his own counsel, does not specifically demonstrate how the PSR factual summaries are incorrect.  Further, Movant makes no showing to establish that a connection between

17

the weapon and the offense was clearly improbable.[7]  Absent a specific and concrete showing on these matters, Movant fails to establish that counsel was deficient for failing to object in regard to the firearm enhancement and the related PSR facts or that he was prejudiced.  See Boles, 2021 WL 1207733, at **12-15; see also Hilliard, 752 F.2d at 580-81.

Further, Movant fails to establish that there is a reasonable probability that – had counsel objected based on the showing that Movant now makes – the Court would have found that the government had not met its burden or that Movant had countered the government's burden. Additionally, a successful objection to the firearm enhancement, at most, would have resulted in a thirty-three adjusted offense level, with a guidelines range of 135 to 168 months.  There is no indication in the record that the Court would have considered anything below the 144-month sentence that it imposed.  Moreover, the Court stated that it would not impose a lower sentence, notwithstanding its willingness to impose a  sentence below the applicable guideline range.  Thus, ground one fails.

---

[7] Movant's claim that the gun was placed in his closet years ago by his wife does not change his awareness of, or his ability to use, the gun, and the statement is insufficient to meet his burden.

18

**B.**     **Grounds Two and Three, Whether the Government Breached the Plea Agreement and Whether Movant's Sentence was Imposed in Violation of Due Process and the Sixth Amendment**

As indicated earlier, Movant agreed to a limited waiver of appeal.  [Doc. 98-1 at 14].  He signed the plea agreement which acknowledged that he had read and discussed with counsel, that he understood the terms, and voluntarily accepted them. [Id. at 16-17].  During the plea hearing, after Movant was placed under oath, the Court questioned Movant on his appeal waiver and asked if he understood that he was waiving his right to appeal and the right of collateral attack, noting the exceptions as to the imposition of an upward departure and claims involving ineffective assistance of counsel.  [Doc. 139-2 at 7].  Movant stated that he understood.  [Id. at 8].

Movant now contends (1) in ground two that the government breached the plea agreement by seeking a two-point enhancement under U.S.S.G. § 2D1.1(b)(1), and (2) in ground three that his sentence was imposed in violation of due process and his Sixth Amendment right to have a jury determine facts that increase the statutory maximum.  [Doc. 136 at 4, 5, 7].  In response to the questions on why he did not raise grounds two and three on direct appeal, Movant states, without elaboration, "ineffective assistance of counsel[.]"  [Id. at 6-7].

Respondent argues that these grounds fail because they (1) were not raised on direct appeal, resulting in procedural default which Movant has not overcome; (2) are prohibited by the appeal waiver; and (3) are without basis in fact or law.  [Doc. 139 at 16-19].

Because Movant did not raise the issues in grounds two and three on direct appeal, they are procedurally defaulted.  See Fordham, 706 F.3d at 1349.  Movant's curt use of the phrase "ineffective assistance of counsel" – in response to why he had not raised grounds two or three on appeal [Doc. 136 at 4, 6] – does not show cause. Additionally, Movant's voluntary appeal waiver does not provide cause for his default. [8]  See Carter v. United States, No. 18-12723-B, 2018 WL 8667010, at *2 (11th Cir. Oct. 12, 2018) ("The fact that the claim may have been barred by the appeal waiver in his plea agreement did not constitute 'cause' to overcome the procedural default because Carter voluntarily waived his appellate rights, and this was not a

---

[8] In light of the court's specific questioning of Movant during the plea colloquy on the appeal waiver [Doc. 139-2 at 7-8], Movant's appeal waiver was knowing and voluntary.  See United States v. Boyd, 975 F.3d 1185, 1192 (11th Cir. 2020) (citing United States v. Bushert, 997 F.2d 1343, 1351 (11th Cir. 1993)).  In addition to not providing cause, Movant's voluntary waiver also waived his right to raise on collateral review his claims in grounds two and three.

factor external to the defense."). Movant otherwise does not overcome his default, and grounds two and three fail.

## IV. <u>Certificate of Appealability (COA)</u>

Under Rule 11 of the Rules Governing § 2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." The Court will issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The applicant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." <u>Melton v. Sec'y, Fla. Dep't of Corr.</u>, 778 F.3d 1234, 1236 (11th Cir. 2015) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)).

> When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, the prisoner in order to obtain a COA, still must show both (1) "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and (2) "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."

Lambrix v. Sec'y, DOC, 872 F.3d 1170, 1179 (11th Cir. 2017) (quoting Slack, 529 U.S. at 484).

The undersigned recommends that a COA should be denied because it is not reasonably debatable that Movant fails to show that he is entitled to collateral relief. If the Court adopts this recommendation and denies a COA, Movant is advised that he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22."  Rule 11(a), Rules Governing § 2255 Proceedings for the United States District Courts.

## V.    **Conclusion**

For the reasons stated above,

**IT IS RECOMMENDED** that Movant's motion to vacate, set aside, or correct his federal sentence [Doc. 136] and a certificate of appealability be **DENIED**.

The Clerk of Court is **DIRECTED** to withdraw the referral of this § 2255 motion from the assigned Magistrate Judge.

**IT IS SO RECOMMENDED and DIRECTED**, this 1st day of September, 2021.

REGINA D. CANNON
UNITED STATES MAGISTRATE JUDGE

22